UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CATHERINE A. KERN, on behalf of herself,
CLEAN WATER ADVOCATES OF NEW YORK,
and KATHY R. KAMINSKI, on behalf of herself
and NIAGARA RIVER PRESERVATION SOCIETY,

                          Plaintiffs,

        vs.                                                          1:10-CV-1519
                                                                     (MAD/RFT)

STANLEY GEE, in his official and individual
capacities as Acting Commissioner of the NEW
YORK STATE DEPT. OF TRANSPORTATION,

                          Defendant.

_____

APPEARANCES:                              OF COUNSEL:

HODGSON RUSS, LLP                         Daniel A. Spitzer, Esq.
The Guaranty Building                     Charles W. Malcomb, II, Esq.
140 Pearl Street, Suite 100
Buffalo, New York 14202
*Attorneys for Plaintiffs*

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL OF
THE STATE OF NEW YORK                     Robert Rosenthal, Esq.
The Capitol                               Lisa Burianek, Esq.
Albany, New York 12224
*Attorney for Defendant*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

        Plaintiffs commenced the within action seeking declaratory and equitable relief and

penalties pursuant to the citizen suit provisions set forth in Section 505 of the Clean Water Act

("CWA"), 33 U.S.C. § 1356.  Defendant moves for dismissal of the complaint pursuant to Fed. R.

Civ. P. 12(b)(1) due to lack of subject matter jurisdiction.   In the alternative, defendant moves to

dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Prior to discussing the factual and

procedural history of this case, the Court addresses the applicable statutory framework.

## CLEAN WATER ACT

"The CWA's primary function is to regulate the discharge of pollutants into navigable

waters. Although the Act contains the lofty goal of eliminating water pollutant discharges

altogether, the regulatory regime it creates requires principally that discharges be regulated by

permit, not prohibited outright."  *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of*

*New York,* 273 F.3d 481, 486 (2d Cir. 2001).  The CWA prohibits the discharge of pollutants

from a point source to waters of the United States except pursuant to and in compliance with a

National Discharge Elimination System ("NPDES") permit.[1]  *See* 33 U.S.C. § 1342(a).

The NPDES program provides for the issuance of discharge permits that allow the holder

to discharge pollutants at levels below thresholds incorporated in the permit.  *Id.* (citing 33 U.S.C.

§ 1342(a)); *see also* 40 C.F.R. § 122.1 *et seq.*  In New York, the NPDES program is administered

by the New York State Department of Environmental Conservation ("NYSDEC") and referred to

as the State Pollution Discharge Elimination System ("SPDES").  *Id.* (citing 33 U.S.C. §

1342(b)); N.Y. Envtl. Conserv. Law §§ 17-0105(13), 17-0701.  The NYSDEC issues SPDES

general permits for routine categories of regulated discharges, including stormwater discharge

from construction activity.  *CARS v. The U.S. Army Corps of Eng'rs*, 2005 WL 3534178, at *6

---

[1] Pollutants are defined as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharging into water".  *See* 33 U.S.C. § 1362(6). The CWA defines "point source" as "any discernable, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged".  *See* 33 U.S.C. § 1362(14).

(W.D.N.Y. 2005) (citing 6 N.Y.C.R.R. 750-1.21); *see also City of Newburgh v. Sarna*, 690

F.Supp.2d 136, 141 (S.D.N.Y. 2010).  Parties may obtain coverage under a general permit by

submitting a letter notice to the NYSDEC with a Stormwater Pollution Prevention Plan

("SWPPP").  *CARS,* 2005 WL 3534178, at *6.  The SWPPP "must include detailed descriptions

of plans for erosion and sediment controls, monitoring and record keeping."   *Haniszewski v.*

*Cadby*, 2009 WL 3165723, at *2 (W.D.N.Y. 2009) (citing *City of New York v. Anglebrook Ltd.*

*P'ship*., 891 F.Supp. 908, 914 (S.D.N.Y.), *aff'd*, 58 F.3d 35 (2d Cir.1995) (per curiam)).

At issue in this case are two General Permits impacting the sewer systems: (1) General

Permit–0–10–001, which may be used for construction activities involving any amount of

disturbed acreage provided that the eligibility requirements are met, *CARS*, 2005 WL 3534178, at

*5; and (2) General Permit  0–10-002, which allows for stormwater discharges from municipal

sewer systems (MS4s).[2] *Kern v. Wal-Mart,* 2011 WL 13244234 (W.D.N.Y. 2011).


## BACKGROUND[3]

Plaintiff, Catherine A. Kern is President of Clean Water Advocates of New York

("CWANY").  Plaintiff, Kathy R. Kaminski is the President of the Niagara River Preservation

Society ("NRPS").  Plaintiffs allege that the New York State Department of Transportation

("NYSDOT") is a regulated municipal separate stormsewer system (MS4) and that NYSDOT

owns and possesses tens of thousands of miles of right-of-way crossing in New York.  Plaintiffs

allege that as to any construction activity within these rights-of-way, discretionary NYSDOT

---

[2]  MS4 - a conveyance or system of conveyances: (i) owned or operated by a state . . . having jurisdiction over disposal of . . . stormwater; (ii) designed or used for collecting or conveying stormwater.

[3]  In reviewing the complaint and other submissions, the Court accepts as true all factual allegations and draws all reasonable inferences in plaintiffs' favor for purposes of the pending motion.  *See ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

permission is required and obtained through a highway work permit.  Plaintiffs claim that

NYSDOT is an owner/operator as defined under the SPDES General Permit for Stormwater

Discharges from Construction Activity[4] and, as a rule, development activities on NYSDOT

rights-of-way are part of a "larger common plan of development" as defined by the SPDES

General Permit for Stormwater Discharges from Construction Activity.[5]   Therefore, plaintiffs

claim that such activities required NYSDOT to obtain permit coverage.  However, plaintiffs claim

it is defendant's policy or procedure not to obtain such coverage.

## I.      July 6, 2010 Letter

On July 6, 2010, attorney David J. Seeger, forwarded a letter, via certified mail, to

defendant.  The letter was also addressed to Wal-Mart Stores, Inc. and Wal-Mart Business Real

Estate.[6]  The letter was written on behalf of "Clean Water Advocates of New York" in response

to, "prospective and continuing violations of the CWA and its implementing regulations

committed by NYSDOT and the Wal-Mart entities".  The "notifiers" are listed as the "Clean

Water Advocates of New York By Catherine A. Kern, its President".

The letter contains the following allegations relating to GP-0-08-002 (General Permit for

Stormwater Discharges from MS4s):

> Permittees such as the NYSDOT that . . . have coverage under GP-0-
> 08-002 , are obligated under the 2008 General Permit to develop a
> stormwater management "SWMP Plan" by March 9, 2009.   The

---

[4] Owner or Operator - means the person, persons or legal entity which owns or leases the property on which the construction activity is occurring; and/or an entity that has operational control over the construction plans and specifications, including the ability to make modifications to the plans and specifications. *See* SPDES General Permit for Stormwater Discharges from Construction Activity, App. A.

[5] Larger Common Plan of Development or Sale - means a contiguous area where multiple separate and distinct construction activities are occurring, or will occur, under one plan. *See id.*

[6] Wal-Mart is not a defendant in this action.

SWMP Plan is important for many reasons, among them, for the purpose of implementing the SWMP which was supposed to have been developed under the original General Permit. The NYSDOT appears not to have developed and adopted and implemented a SWMP Plan.

All permittees are required to disclose the location and availability of the SWMP Plan when submitting annual certifications. The NYSDOT's first annual certification was due on June 1, 2009. Unfortunately, it did not disclose the existence of the SWMP Plan, the person who could be contacted to obtain access to review the SWMP Plan, where the SWMP Plan is available for inspection, and the fact that the SWMP Plan itself is available for inspection by the public. Thus, there are procedural and substantive violations. It appears that it has not formulated, adopted or implemented a SWMP Plan. This is a substantive violation, as well as a procedural violation insofar as completing the document by a fixed date and making it available for public inspection.

The notifiers also referred to GP-0-08-01, the General Permit for Stormwater Discharges from Construction Activities:

There is a second relevant permit under Congress' stormwater regulatory regime. Among the class of "industrial activity" subject to regulation are construction activities that, individually, or as part of a plan of common development, will disturb in excess of five acres. The Wal-Mart supercenter development will disturb in excess of five acres. The City of North Tonawanda and NYSDOT maintain stormsewer systems that service the Wal-Mart site. . . [T]he City and NYSDOT require coverage under the "SPDES General Permit for Stormwater Discharges from Construction Activity".

The letter is divided into two distinct parts detailing both "State Agency" violations and "Wal-Mart Violations":

## PART A
## STATE AGENCY CLEAN WATER ACT VIOLATIONS

Generally speaking, an MS4 is regulated (and therefore subject to the need for a permit) as to those parts of its MS4 system that lie within automatically designated areas and additionally designated areas. NYSDOT maintains a regulated MS4 on, under and along the State Route 62 (Niagara Falls Blvd.) stretch in the City of North Tonawanda, which system receives stormwater emanating from the NYSDOT right-of-way and adjoining property (including the Wal-Mart project site at issue in this matter) between Erie Avenue and the former Wurlitzer factory complex. The stormwater collected in this system discharges in Sawyer Creek, a perennially-flowing body of water that constitutes waters of the United States. Discharges into Sawyer Creek are conveyed and discharged into Tonawanda Creek, a body of water that is navigable-in-fact, which drains into the Niagara River.

The violations arise from NYSDOT's failure to abide by terms of, a Clean Water Act 402 permit to discharge stormwater from NYSDOT's municipal separate stormwater sewer systems (MS4s) into waters of the United States. These violations include its failure to comply with the terms, conditions and effluent limitations of the State Pollutant Discharge Elimination System (hereafter SPDES) general permit for stormwater discharges from municipal separate stormwater sewer systems (MS4s) (hereafter GP-0-08-002 and GP 0-10-002). These violations have resulted and will continue to result in, *inter alia*, the direct pollution of creeks and lakes with a broad range of pollutants, including fecal coliform, heavy metals, such as lead, zinc and cadmium, pesticides and herbicides, total suspended solids, floatable litter and pollutants, heated water and other pollutants.

Plaintiffs charged the NYSDOT with continuous violations of GP-0-10-002 (and

previously GP-0-08-002), *inter alia*, in 2009 and 2010 as follows:

The NYSDOT has failed to report on the SWMP Program implementation and the SWMP plan, including annual report presentation information (or how the report was made available for public comment), comments received and intended responses, public involvement/participation activities, as well as a report on effectiveness of the program, BMP, and measurable goal assessment.

The NYSDOT has failed to develop and maintain a map showing the location of all outfalls and the names and location of all surface waters of the State that receive discharges from those outfalls.

>    The NYSDOT has not established and maintained an inventory of
>    active construction sites, including the location of the site and
>    owner/operator contact information.
>
>    The NYSDOT has not developed, recorded or periodically assessed
>    measurable goals or selected appropriate post-construction best
>    management practices or measurable goals to ensure the reduction of
>    all pollutants of concern in stormwater discharges to the maximum
>    extent practicable.

The letter also contains allegations related to the discharge of pollutants by Wal-Mart:

**PART B
CURRENT AND IMPENDING
WAL-MART VIOLATIONS
OF THE CLEAN WATER ACT**

Part B of the letter contains four points which allege violations by Wal-Mart only.

Plaintiffs claimed that Wal-Mart discharged "pollutants" from a "point source". The "point

source" was identified as follows:

>    The Wal-Mart entities have developed a project referred to herein as
>    "the Wal-Mart project site". The area to be disturbed on the project
>    site is 38.7 acres. The disturbed areas include lands recently acquired
>    by Wal-Mart, west of Niagara Falls Blvd., east of Wurlitzer Drive,
>    south of the former Wurlitzer factory complex, and north of a small
>    residential subdivision, together with approximately 8.1 acres of other
>    disturbed areas, including improvements on Niagara Falls Blvd.,
>    utility connections, and construction of a parking area on the Wurlitzer
>    property. The receiving waters are Tonawanda Creek, which accepts
>    discharges from the City of North Tonawanda MS4, i.e., a 90 inch
>    diameter stormsewer  system along Wurlitzer Drive, and Sawyer
>    Creek, into which the aforesaid project will directly discharge.

Plaintiffs claim that the demolition began on or about April 6, 2010 and is substantially

complete. Plaintiffs claim that Wal-Mart has failed to comply with GP-0-08-001 (General Permit

for Construction Activities):

>    According to the NYSDEC database available on the agency's internet
>    website, which is presumed current, the construction activities

7

including demolition that have taken place to date on the project site have not been pursuant to a SPDES General Permit or any other permit issued by NYSDEC pursuant to its delegated authority under the Clean Water Act. Thus, the discharges from construction activities to date have no permit and are in violation of 42 U.S.C. 1311 & 1342, and such other provisions as described above.

## II.    COMPLAINT

The complaint originally set forth two causes of action.

### A.    First Cause of Action - Defendant Stanley Gee Violated and is Violating the CWA By NYSDOT's Failure to Obtain Coverage under the SPDES General Permit for Stormwater Discharges From Construction Activities

In the First Cause of Action, plaintiffs allege that defendant is an owner and operator of

construction activities undertaken within its rights-of-way and as such, must obtain permit

coverage under DEC's Construction Permit. However, plaintiffs claim that it is defendant's

policy and practice not to obtain such coverage and as a result, defendant is allowing runoff from

activities into a "large number of construction sites across the State of New York". Plaintiffs list

four premises where they allege that stormwater runoff from construction activity is being

discharged:

> At a premises commonly known as 3650 Millersport Highway, upon information and belief, there is a construction project underway, sponsored by Bryant & Stratton, entailing the physical disturbance of approximately 5.6 acres and incorporating construction in the NYSDOT right-of-way. The stormwater runoff from this activity is being discharged into a NYSDOT MS4, from which it is then discharged into the Tonawanda Creek;

> At a premises commonly known as 5319 Enterprise Drive in the Town of Lockport, New York, upon information and belief, there is a construction project underway, entailing the physical disturbance of approximately 21.9 acres and incorporating the following construction in the NYSDOT right-of-way: the placement of stormwater culverts and rip-rap fall in the NYSDOT right-of-way. Stormwater runoff from these construction activities is being discharged into a culvert under a New York State Highway, known as Lockport-Junction Road,

> Route 93 and into a drainage ditch that discharges into Bull Creek and
> then into Sawyer and Tonawanda Creeks;
>
> At a premises commonly known as 5014 Transit Road in the Town of
> Cheektowaga, New York, upon information and belief, there is a
> construction project underway entailing the physical disturbance of
> approximately 1.4 acres and incorporating the following construction
> in the NYSDOT right-of way: the cutting of the state highway to tap
> in to the NYSDOT storm sewer.  Stormwater runoff from this project
> site is being discharged into a NYSDOT MS4, from which it is then
> discharged into a tributary of Slate Bottom Creek and then into
> Cayuga Creek;
>
> At a premises at the intersection of Sheridan Drive and Colvin
> Boulevard in the Town of Tonawanda, New York, upon information
> and belief, there is a construction project underway, entailing the
> physical disturbance of approximately 2.9 acres and incorporating the
> following construction in the NYSDOT right-of-way: driveway
> demolition and reconstruction for ingress and egress.  The stormwater
> runoff from the construction activity is being discharged into a
> NYSDOT MS4, from which it is then discharged into Ellicott Creek
> which flows into Tonawanda Creek.

Plaintiffs also describe five ongoing construction projects outside Western New York that incorporate discharges into MS4s including: (1) the "Dickerson Waste Site" in the Town of Lindley, Steuben County; (2) a project in North Greenbush, Rensselaer County; (3) the "Deer Meadows" subdivision in Franklin County; (4) a National Grid project in Oneida County; and (5) the "Fish Kill Woods" subdivision in Dutchess County.

Plaintiffs claim that this is part of a pattern of discharges into NYSDOT storm sewers across New York including projects outside Western New York.  Plaintiffs claim that NYSDOT is violating the CWA and as such, plaintiffs are entitled to injunctive relief and an order directing the NYSDOT to obtain coverage and abide by the conditions and terms of the SPDES General Permit for Stormwater Discharges from Construction Activity.

**B.**    **Second Cause of Action - Defendant Stanley Gee Has Violated the CWS By NYSDOT's Failure to Comply with the General Permit for Stormwater Discharges From Municipal Separate Stormwater Systems**

In the Second Cause of Action, plaintiffs alleged that defendant, "has not developed, adopted, and implemented a SWMP Plan":

> All MS4s that are located in "urbanized areas" as defined by the Bureau of Census, plus additional certain designated MS4s, must establish stormwater management programs whose components match a federal standard, and that integrate review of stormwater pollution prevention plans ("SWPPPs") prepared in compliance with the aforesaid SPDES general permits for stormwater discharges from industrial and small construction activities, into local land use regulation and agency determinations.
>
> In New York State . . . the operator of an MS4 must have developed a stormwater management program ("SWMP").  The SWMP was to have been fully developed and implemented by March 10, 2003.

**C.**    **Partial Consent Decree**

On June 16, 2011, the parties entered into a Partial Consent Decree with respect to the second cause of action.  The Decree provides, "[p]laintiff's served DOT with a letter dated July 6, 2010, explaining in sufficient detail the allegations upon which the second cause of action of the Complaint is based, thus meeting the notice requirements of 42 U.S.C. § 1365(b)".  Accordingly, the parties agree that, "the Court has jurisdiction over the second cause of action".

The parties further agreed as follows:

> DOT shall meet the SWMP Plan requirements specified on pages 49-67 of the MS4 Permit, as follows:
>
> (i)    By April 27, 2011, DOT shall issue a draft SWMP Plan for public comment, such public comment period lasting for no less than thirty (30) days;
>
> (ii)    DOT shall provide notification of the availability of the draft SWMP Plan for public review and comment in DEC's Environmental Notice Bulletin and on the DOT website;

10

(iii)    By July 27, 2011, DOT shall establish a final SWMP Plan that (a) responds to all public comments and (b) makes appropriate changes to the Draft Plan in response to comments if deemed necessary; and

(iv)    DOT shall post the final SWMP Plan on its website.

## III.    Prior Litigation[7]

The parties herein have been engaged in extensive litigation in both state and federal court.  In four prior actions filed in Niagara County, plaintiffs attempted to stop Wal-Mart from constructing a Wal-Mart Supercenter in the City of Tonawanda ("the project").  Three of the four lawsuits were dismissed after motion practice and the fourth action was resolved by a Stipulation of Discontinuance with prejudice.  *See* Niagara County Index Nos. 134993; 138884; 139795; and 141275); *see also Kern v. Wal-Mart,* 2011 WL 13244234 (W.D.N.Y. 2011).

On October 19, 2010, plaintiffs filed an action in the Western District of New York entitled *Kern v. Wal-Mart Stores, Inc*. *and the City of North Tonawanda* (Case No. 10-CV-827A). The case involved allegations related to the same development project at issue herein, the Wal-Mart project at the intersection of Niagara Falls Boulevard and Erie Avenue including the Melody Fair Theater.  Plaintiffs allegations against the City were similar to those alleged against defendant in that plaintiffs claimed the City allowed unauthorized stormwater discharges to occur because it lacked permits and plans that would manage such discharges.  *See Kern*, 2011 WL 1344234, at \*9.  Specifically, plaintiffs alleged that the City failed to obtain coverage under and comply with the terms of the SPDES General Permit, GP-02-02.  *Id.* at \*5.  As against Wal-Mart,

---

[7] Plaintiffs do not mention or reference any prior litigation in this lawsuit.

plaintiffs alleged that the physical alteration resulted in soil disturbances and surface runoff into receiving waters. *Id*.

The defendants filed motions to dismiss. The City argued that both the associational and individual plaintiffs lacked Article III standing. The City submitted evidence demonstrating that the City implemented a SWMP and SWPPP plans, filed annual reports and solicited public comments for its SWMP. Accordingly, the Court found that, "the problem has been corrected". *Id*. at *9. On April 8, 2011, the district court issued a decision dismissing plaintiffs' complaint against the City for lack of Article III standing. *Id*. In the decision, the Court also discussed statutory standing and the adequacy of plaintiffs' Notice Letter. The only notice the City ever received was from NRPS by way of Kaminski, as President. *Id*. at 13. The only notice Wal-Mart received was from CWANY, by way of Kern, as President. *Id*. As a result, the Court found that the notice requirements of § 1365(b) was not met. *Id*.

Presently before this Court is defendant's motion to dismiss plaintiffs' complaint. Defendant claims that plaintiffs' Notice Letter did not provide defendant with sufficient detail of the alleged violations. Moreover, defendant claims it is not required to obtain coverage under the DEC's General Permit when a third-party has obtained permit coverage.

**DISCUSSION**

**I.      Standard on Rule 12(b)(1) Motion**

"Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when there is a 'lack of subject matter jurisdiction' by the federal court and Rule 12(b)(6)

provides for dismissal of a claim for a plaintiff's 'failure to state a claim upon which relief can be granted'". *Culbertson v. Cameron*, 2010 WL 1269777, at \*2 (E.D.N.Y. 2010). The standards for dismissal under 12(b)(1) and 12(b)(6) are identical. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) (the plaintiff has the burden of proof on a 12(b)(1) motion and the defendant has the burden on a 12(b)(6) motion). In addressing defendant's motion to dismiss, the Court accepts as true all of the factual allegations in the complaint and draws inferences from those allegations in the light most favorable to plaintiffs. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *McEvoy v. Spencer*, 124 F.3d 92, 95 (2d Cir. 1997). Dismissal is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims". *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001). In a 12(b)(1) challenge to the court's subject matter jurisdiction, the Court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings. *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

## II.    Notice of Intent to Sue

"An aggrieved plaintiff may bring a civil action for specific relief, such as the imposition of particular compliance measures, or civil penalties payable to the treasury, and may recover attorney's fees." *See* 33 U.S.C. §§ 1365(a); 1365(d). At least 60 days prior to filing, the prospective plaintiff must provide notice of its claims to the potential defendant. *Catskill Mountains Chapter*, 273 F.3d at 486 (citing 33 U.S.C. § 1365(b)(1)(A)). The notice and 60-day delay requirements allow a potential defendant to identify its own violations and bring itself into

compliance voluntarily, thus making a costly lawsuit unnecessary. *Id*. at 488. The CWA does

not describe the content of the required notice, but directs that "[n]otice . . . shall be given in such

manner as the Administrator shall prescribe by regulation." *Id*. at 487 (citing 33 U.S.C. §

1365(b)). The EPA has adopted such regulations, which mandate, *inter alia*, as follows:

> Notice regarding an alleged violation of an effluent standard or
> limitation or of an order with respect thereto, shall include sufficient
> information to permit the recipient to identify the specific standard,
> limitation, or order alleged to have been violated, the activity alleged
> to constitute a violation, the person or persons responsible for the
> alleged violation, the location of the alleged violation, the date or
> dates of such violation, and the full name, address, and telephone
> number of the person giving notice.

*Id*. (citing 40 C.F.R. § 135.3(a)). The regulation does not require that plaintiffs "list every

specific aspect or detail of every alleged violation." *Cmty. Ass'n for Restoration of the Env't v.*

*Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002) (quoting *Pub. Interest Research Group v.*

*Hercules, Inc*., 50 F.3d 1239, 1248 (3d Cir. 1995)). "The key language in the notice regulation is

the phrase 'sufficient information to permit the recipient to identify' the alleged violations and

bring itself into compliance." *Id*. at 951. Notice is sufficient if it is specific enough "to give the

accused company the opportunity to correct the problem." *Id*. at 952 (quoting *Atl. States Legal*

*Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir.1997)).

"In the past, we have refused to 'allow form to prevail over substance' in considering the

content required of an NOI letter, and have looked instead to what the particular notice given may

reasonably be expected to accomplish." *Catskill Mountains Chapter*, 273 F.3d at 488 (quoting

*Dague v. City of Burlington*, 935 F.2d 1343, 1354 (2d Cir.1991), *rev'd in part on other grounds*,

505 U.S. 557 (1992)). Strict compliance with this "notice provision is a mandatory, not optional,

condition precedent for suit." *Dague v. City of Burlington*, 935 F.2d 1343 (2d Cir.1991) (citing

*Hallstrom v. Tillamook County*, 493 U.S. 20, 26 (1989)). A plaintiff may not circumvent the

*Catskill Mountains* requirement of adequate notice by making equally vague allegations in the NOI letter and the Complaint. *Klebe v. Tri Mun. Sewer Com'n*, 2008 WL 5245963, at \*4 (S.D.N.Y. 2008) (the plaintiffs cannot have given proper notice of the defendant's specific violations merely by broadly accusing the defendant of having discharged "unpermitted waste products" into the Hudson River).

Here, defendant claims that the only allegation in the first cause of action relates to alleged violations of the General Permit for Stormwater Discharges from Construction Activity. To that end, defendant notes that the nine properties in Central and Western New York identified in the complaint were not included in the Notice Letter. Thus, defendant contends that the letter is insufficient as it failed to identify: (1) the permit that DOT was supposedly violating; (2) where and when the specific violations occurred; and (3) any of the activities alleged to constitute a violation. In opposition, plaintiffs argue that the letter, "identified the violation: NYSDOT is required to obtain coverage under the Construction General Permit for property that is 'part of a plan of common development' (the highway-right of way). The violation is obvious: NYSDOT takes the affirmative position that it is not required to do so". Plaintiffs claim that defendant has a policy and/or position that it need not obtain coverage under the Construction General Permit and that "each and every violation that results from that policy need not be enumerated in the notice letter".

The Court has reviewed the Notice Letter and compared the allegations set forth therein with the claims asserted in the complaint. For the following reasons, the Court holds that July 2010 letter failed to sufficiently notify defendant of the alleged violations. In the first cause of action, plaintiffs assert that defendant's violations affect "a large number of construction sites across the State of New York". Plaintiffs only identified four sites: 3650 Millersport Highway;

15

5319 Enterprise Drive; 5014 Transit Road; and the intersection of Sheridan Drive and Colvin Boulevard.  The complaint also vaguely identified five ongoing construction sites outside Western New York where discharges are allegedly being made into MS4s.  None of the aforementioned premises, locations or project names are listed or mentioned anywhere in the Notice Letter.   Moreover, there is no allegation or evidence that those sites or projects are owned, operated or in any way related to Wal-Mart.  Conversely, the only specific parcel or construction site referenced in the Notice Letter is Wal-Mart's 38.7 acre project site located near Niagara Falls Blvd and Wurlitzer Drive.  Notably, that site is not included or referenced anywhere in the complaint.

Each and every parcel and premises identified in the complaint is absent from the notice letter.  The presentation of new and additional locations in the complaint, "present a completely different picture . . .  with respect to this Court's consideration of appropriate civil penalties and injunctive relief."  *Historic Green Spring, Inc. v. Louisa County Water Auth.,* 2011 WL 2604885, at *5 (W.D.Va. 2011) (holding that the plaintiff could not amend the complaint to assert new violations and locations without first complying with the notice provisions).   There are no maps, photographs or diagrams annexed as exhibits to the Notice Letter.  *See West v. Johnson*, 2009 WL 2477646, at *5 (W.D.Wash. 2009) (the notice letter was insufficient despite the fact that included maps because  they lack any specificity).  While it is true that plaintiffs are not obligated to identify each and every parcel with specificity, the record contains no evidence that plaintiffs previously made any complaints regarding the multiple locations listed in the complaint prior to filing this action.   Without any prior notice of the locations identified in the complaint, defendant had no opportunity to even ascertain, even less remedy, the alleged violations. *See Stephens v. Koch Foods, LLC.*, 667 F.Supp.2d 768 (E.D. Tenn. 2009) (the notice letter specified 13 overflows

16

from a "pump station" but did not clearly state whether all overflows took place at the same pump

station); *see also Sierra Club Ohio Chapter v. City of Columbus*, 282 F.Supp.2d 756 (S.D. Ohio

2003) (the notice letter failed to indicate the dates or specific locations of improper discharges

and thus, did not help the defendant identify any specific location where the violations may have

occurred).   The Notice Letter is further deficient because it does not list Kern individually, or

Kaminski, in any capacity, as plaintiffs.  *See Kern v. Wal-Mart Stores, Inc*., 2011 WL 1344234, at

\*13 (W.D.N.Y. 2011) (the notice letter was served by the associational plaintiffs, not the

individual plaintiffs, and, "[a]s a result, . . . the plaintiffs failed to give notice to the defendant).

In opposition to defendant's motion, plaintiffs cite to *Natural Res. Def. Council v.*

*Southwest Marine, Inc*., 236 F.3d 985 (9th Cir. 2000) and argue, "[t[here, the NRDC was 'not

alleging that a particular discharge from a particular pipe on a particular day violated the CWA'".

Plaintiffs claim that the holding in *Natural Resources* provides support for the premise that

"general violations do not lend themselves to enumeration".   In *Natural Resources*, the plaintiffs

filed an action against the operator of a large shipyard in San Diego Bay for the maintenance and

repair of marine vessels.  Prior to filing the complaint, the plaintiffs served a notice letter that

identified the location as, "the Southwest Marine facility at the foot of Sampson Street in the City

of San Diego".  Moreover, the notice letter, "generally raise[d] the issues of the preparation and

implementation of an adequate SWPPP [storm water pollution prevention plan]." *Id.*  The

plaintiff's alleged, "the defendant had failed to prepare a SWPPP that complied with the specific

requirements of defendant's storm water permit; identified the source of the requirement that

defendant prepare an SWPPP; and explained the ways in which defendant's then-existing SWPPP

did not comply".  *Id*.  The defendant argued that the letter was defective because it failed to

17

provide any information about how defendant violated a specific plan provision. *Natural*

*Resources*, 236 F.3d at 996.  The Court disagreed and held:

> Defendant was operating under a storm water permit that was designed to prevent discharges of toxic pollutants through storm water. That permit required Defendant to prepare and implement an SWPPP that included a "good housekeeping" provision. The permit explained that "[g]ood housekeeping requires the maintenance of clean, orderly facility areas that discharge storm water. Material handling areas shall be inspected and cleaned to reduce the potential for pollutants to enter the storm water conveyance system." Plaintiffs' notice letter sufficiently alleged that Defendant had failed to prepare and implement such a plan.

*Id*.

Upon review, the Court finds that plaintiffs have oversimplified the Ninth Circuit's

holding.  Moreover, the facts of that case readily distinguishable from the case at hand.  In

*Natural Resources*, the Notice Letter contained allegations related to a specific premises - the

defendant's shipyard.  Moreover, the Notice Letter provided the exact location of the shipyard

and further, contained references to the specific water permit at issue and the defendant's alleged

failure to prepare and implement a SWPPP pursuant to that permit.   In this matter, the complaint

generally and vaguely references "a pattern of activity" and then identifies nine parcels that are

not referenced, in any manner, in the Notice Letter.  That issue was not before the Ninth Circuit in

*Natural Resources*.

Consequently, the Court holds that the July 2010 Notice letter did not provide defendant

with sufficient information to permit defendant to correct the violations alleged in the first cause

of action.  The vague allegations relating to "construction activities across the State of New

York" is not cured by the specific reference to nine projects and/or parcels that are not referenced

in the Notice Letter.  Plaintiffs' July 2010 letter did not provide defendant with any prior notice of

the allegations contained in the first cause of action.  Defendant could not have been expected to

remedy the alleged violations contained in the complaint based upon the information contained in the notice letter.  Accordingly, defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is granted.  However, plaintiffs' claims are dismissed without prejudice to refiling after full compliance with 33 U.S.C. § 1365(b)(1)(A).  *See Catskill Mountains*,  273 F.3d at 489.[8]

## CONCLUSION

**It is hereby**

**ORDERED,** that defendant's motion to dismiss plaintiff's complaint (Dkt. No. 8) pursuant to Fed. R. Civ. P. 12(b)(1) is **GRANTED**.

The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: October 3, 2011

Mae A. D'Agostino
U.S. District Judge

---

[8] In the alternative, defendant argues that the complaint should be dismissed because it is based upon the erroneous presumption that defendant is required to obtain permit coverage associated with a development project where a third party in control of the project has already obtained permit coverage.  As defendant's motion to dismiss is granted for lack of subject matter jurisdiction, the Court declines to discuss this issue.